**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ISAAC PARDO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 08410 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| MECUM AUCTION INC., and WILLIAM MULLIS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, defendant Mecum Auction's motion to dismiss [112] is granted in part and denied in part. The fraud and misrepresentation claims (Counts I, III, and IV) are dismissed with prejudice. The motion to dismiss the breach of contract and rescission claims (Counts II and VI) is denied. A status hearing is set for 1/28/15 at 9:00 a.m.

## STATEMENT

According to the Second Amended Complaint ("SAC"), the factual allegations of which are accepted as true, plaintiff Isaac Pardo purchased a black 1967 Corvette coupe at Mecum's Bloomington Gold Corvette Auction on June 25, 2011. The subject Corvette had been billed as one of 23 cars in the "Black Collection," a group of rare and valuable Corvettes produced in the 1950s and 1960s, when few black Corvettes were made. The Black Collection was previously owned by defendant William Mullis. After placing the high bid, Pardo learned that his was in fact a 1964 Corvette doctored and painted to look like a black 1967 model. According to the complaint, "[t]he 1967 Corvette Coupe owned by Mullis was, however, a fraudulent amalgamation of Corvette parts from various model years, placed on a damaged 1964 Corvette frame, with fraudulent vehicle identification numbers and tags added to the vehicle, with the vehicle then cosmetically altered and painted black in order to appear to be a 1967 Corvette Coupe."

Mecum created and distributed various advertising materials before the June 2011 auction. The purported 1967 black coupe was identified as Auction Lot Number S41. "Prior to the Bloomington Gold Auction, Mecum, for its own benefit and as agent for Mullis, purchased and displayed in Illinois a sealed certificate from the National Corvette Restorers Society ('NCRS'), which certified that the 1967 Corvette Coupe was a 1967 Corvette, with a vehicle identification number ('VIN') of 1943775111042, and a production date of February 27, 1967." SAC, Dkt. # 101 ¶ 10.

Pardo relied on the advertising material in deciding to attend the auction and bid on the 1967 coupe. When viewing the vehicle in person, he observed the NCRS certificate prominently

displayed in the windshield. "In reliance on representations made at the Bloomington Gold auction – both in materials placed on the 1967 Corvette Coupe and in oral representations made by Mecum on its own behalf and as agent for Mullis – Pardo bid on the 1967 Corvette Coupe at the auction." SAC, Dkt. # 101 ¶ 15. He was the high bidder for the 1967 Corvette Coupe; with a bid of $68,500, plus an auctioneer's commission to Mecum of $4,110.

Pardo began to question the legitimacy of the black coupe shortly after placing the winning bid, because Corvette experts at the auction told him that his car was not actually a 1967 Corvette. When Pardo made inquiries with Mecum Auction, he claims that he was assaulted and threatened with a breach-of-contract lawsuit. Pardo therefore paid for the Corvette and for shipping to his home in New York. He later confirmed that the vehicle was a worthless counterfeit.

Thereafter, "Mecum, after learning that Pardo was aware of the counterfeit nature of the 1967 Corvette Coupe, refused to provide Pardo with a title to the car, despite Pardo's repeated demands. Mecum and Mullis were both aware that if they delivered a fraudulent title for a counterfeit car that they sold in Illinois, they would be guilty of a criminal felony. Mecum and Mullis thus went into a stall in delivering the title to Pardo as they tried to determine what to do with their fraud scheme gone awry." SAC, Dkt. # 101 ¶ 23. For months, Pardo was left without the title to the car, yet Mecum refused to refund his money.

Finally, in November 2011 Mecum and Mullis delivered a certificate of title for the purported 1967 Corvette Coupe. It indicates that Mullis first sold the 1967 Corvette Coupe in Illinois to "Mecum Collection" – no sales price to Mecum Collection is reflected on the title – and Mecum Collection then transferred title to "Billy Bob's Fast Expensive Cars." According to the complaint, "Mecum and Mullis undertook these steps to place other entities in the 'chain of title,' in the hope of insulating themselves from a lawsuit by Pardo and to avoid potential criminal liability for the fraudulent sale of a counterfeit vehicle in Illinois and its transfer to the state of New York." SAC, Dkt. # 101 ¶ 25.

Based on these allegations, Pardo sued Mecum and Mullis for fraud and other unlawful conduct in the marketing and sale of the counterfeit Corvette. Specifically, Pardo brings claims against Mecum for (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (2) breach of contract; (3) fraudulent and negligent misrepresentation; and (4) rescission. Pardo attached to the complaint numerous exhibits, including his contract with Mecum (the bidder registration) and the certificate of title. These are now part of the pleadings for all purposes. *See* Fed. R. Civ. P. 10(c); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Mecum now moves to dismiss all claims against it. First, it argues that Pardo fails to meet the heightened pleading standards of Fed. R. Civ. P. 9(b) with respect to the ICFA and fraudulent misrepresentation claims. As to the negligent misrepresentation claim, Mecum argues that basic pleading standards are not met because Pardo does not identify the content of any alleged false statement of material fact. Finally, Mecum argues that "all of Plaintiff's allegations and claims

against Mecum are defeated by the exhibits Plaintiff attaches to the Second Amended Complaint," which, it says, establish that Plaintiff purchased the Corvette "as is" and entirely on his own examination, and further that he was issued title, as promised, for a black 1967 Corvette with the appropriate VIN number.

When analyzing the sufficiency of a complaint, the court construes it in the light most favorable to the plaintiff, accepting well-pleaded facts as true, and drawing all inferences in the plaintiff's favor. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011). Under Federal Rule of Civil Procedure 8, a complaint can withstand a motion to dismiss only if it alleges enough facts to render the claims facially plausible, not just conceivable. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, under Rule 9(b) of the Federal Rules of Civil Procedure, a party who alleges fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.* 631 F.3d 436, 441 (7th Cir. 2011). "The requirement that fraud be pleaded with particularity compels the plaintiff to provide enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless. It also forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims." *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005). Particularity for purposes of Rule 9(b) "means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

1. Claims Based on Alleged Misrepresentations (Counts I, III, and IV)

Mecum first argues that the ICFA and fraudulent and negligent misrepresentation claims are not pleaded with sufficient particularity because Pardo fails to allege "what statements were made in the alleged advertisements" and "who at Mecum made representations at the auction or what statements were made at the auction." Mem., Dkt. # 113 at 6. In response, Pardo argues that the allegation that "Defendant represented that it was selling a black 1967 Corvette Coupe, when it was not a black 1967 Corvette Coupe" is sufficient to identify the misrepresentation underlying the fraud claims.

The Court agrees with Pardo—but only with respect to the particularity of the SAC's allegations that Mecum's advertising materials and auction catalog misrepresented the car as a 1967 Corvette. The SAC alleges a simple fraud: stating that something is one thing when it is really another. Mecum does not dispute that it advertised and auctioned a black 1967 Corvette coupe as part of the Black Collection at the 2011 Bloomington Gold Auction. The complaint states that Mecum advertised the car as such, and listed it in the auction catalog as such, knowing that it was not. The complaint further alleges that the car was in fact a 1964 Corvette that had been altered. The nature of the misrepresentation in the marketing materials is clear, and if Pardo's claim is groundless, Mecum has sufficient detail to "riposte swiftly and effectively." *Fidelity Nat'l Title Ins. Co.*, 412 F.3d at 749.

3

But Pardo's allegations about oral statements made at the auction (¶ 15 of the SAC), however, are inadequate to support his fraud-based claims. With the exception of the NCRS certificate, Pardo fails to supply any particulars concerning alleged misstatements by any agent of Mecum at the auction. There is, accordingly, no way for Mecum to contradict or otherwise defend against Pardo's allegations about such statements. That is not the case for the certificate supplied by the NCRS (with which Pardo already has settled his claim), of course, but to the extent that Pardo bases any claim of fraud on Mecum's use of that certificate, that claim cannot succeed; Pardo's claim that the NCRS certificate represented the car to be a black 1967 Corvette, is undermined by the text of the certificate itself, which Pardo included with his complaint. *See Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) (explaining that where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls, and a plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he is not entitled to judgment). Here, the NCRS document simply certifies that *a* 1967 Corvette bore the VIN number on the Corvette that Pardo purchased; it does not certify that the Pardo's car is that same 1967 Corvette.

But even if Pardo had pled his fraud allegations with sufficient particularity, the claims fail as a matter of law because the SAC's allegation that Pardo relied on those misrepresentations is negated by Pardo's express disclaimer of reliance on any representations by Mecum. In the Bidder Registration (Exhibit B to the SAC), which Pardo alleges is his "written contract" with Mecum, *see* SAC ¶ 13, Pardo as the bidder acknowledges that all lots are purchased "as is" and "entirely upon [the buyer's] own or his agent's examination and opinion." As Mecum contends, this means that Pardo cannot establish that he bought the car relying upon on any misrepresentations by Mecum.

Pardo responds only to argue that the contract was attached and referenced with respect to the breach-of-contract claim, and therefore, it should not be assumed true or relied upon for the purpose of his fraud claims. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998) (explaining that "it is necessary to consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents"). But Pardo does not dispute the authenticity of the document nor that it constituted a contract. And Pardo also argues, as a point in his favor, that the full provision quoted in part by Mecum "acknowledges that representations were made, not only before the auction, but at the auction regarding the vehicle." Mem. Dkt. # 115 at 6-7. He wants both to be excused from the contract's terms and to hold them against Mecum. But he does not substantively take on the defendant's argument, and cites no Illinois authority for the proposition that his claim of reliance is not negated by the unambiguous contractual disclaimer.

It appears that it is. Under Illinois law, claims for breach of express and implied warranties are defeated by "as is" disclaimers. *See, e.g.,* 810 ILCS 5/2-316(3)(a); *Pelc v. Simmons*, 249 Ill. App. 3d 852, 856-57, 620 N.E. 2d 12, 15 (Ill. App. Ct. 1993). The same holds true for claims of oral misrepresentations. *See, e.g.*, *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 813 N.E.2d 1138 (1st Dist. 2004) (enforcing nonreliance clause in subscription agreement to defeat claim or oral misrepresentation); *Adler v. William Blair & Co.*, 271 Ill. App.

4

3d 117, 648 N.E.2d 226 (1st Dist. 1995) (common-law fraud count dismissed because of non-reliance clause in subscription agreement). Pardo signed a contract decreeing his purchase to be "as is"; he cannot undo that provision and revive the warranties with reference to prior oral misrepresentations because he disclaimed reliance upon anyone's "examination and opinion" other than his own or his agent's. In other words, under the contract, neither Mecum nor any agent of Mecum is responsible for the buyer's decision to purchase a vehicle.

Pardo fails to argue, let alone persuasively, that this contractual non-reliance language is consistent with his allegation that Mecum's falsehoods induced his purchase. He does not argue that the provision, or the contract as a whole, is invalid or voidable for any reason. His claims that are premised on his reliance on Mecum's misrepresentations therefore fail as a matter of law. This includes the negligent misrepresentation claim, which according to the SAC is premised upon the damages "sustained . . . as a result of [Pardo's] reliance" on the misrepresentations of Mullis and Mecum.[1] Indeed, "action by the [plaintiff] in reliance on the truth of the statement" is an element of negligent misrepresentation under Illinois law. *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 938, 791 N.E.2d 553, 562 (2d Dist. 2003). By attaching a contract in which he expressly disclaimed reliance, Pardo pled himself out of court on his negligent misrepresentation claim as well as the intentional fraud claims.

2. Breach of Contract

Mecum next argues that Pardo fails to state a claim for breach of contract because the only alleged breach—failure to provide Pardo with title to the vehicle—has been cured, according to Pardo's own pleading, which includes the certificate of title that he received (about 4.5 months later than the 14 days allowed by the contract) for a 1967 black Corvette coupe with VIN 1943775111042. As a threshold matter, that argument goes nowhere, since the Agreement required delivery of title within 14 days. The damages caused by delayed delivery of title are likely minor, however. More significant is the fact that Mecum's argument mischaracterizes the nature of the breach that Pardo alleges, which is that Mecum failed to issue "proper and legal

---

[1] Mecum does not argue that Pardo's negligent misrepresentation claim is barred by the economic loss doctrine. In Illinois, negligence damages are generally limited to personal injury and property damage claims; solely economic losses are generally not recoverable in tort actions. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). Among other exceptions to the doctrine, Illinois permits claims for negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. An auctioneer might, or might not, qualify as being "in the business of supplying information for the guidance of others in their business transactions," but it is the plaintiff's burden to plead and prove that the negligent misrepresentation exception applies. "To state a claim based on the negligent misrepresentation exception to the Moorman doctrine, the plaintiff must demonstrate that the defendant: (1) is in the business of supplying information for the guidance of others in their business dealings; (2) provided false information; and (3) supplied the information for the guidance of the plaintiff's business transactions." *Tyler v. Gibbons*, 368 Ill. App. 3d 126, 129, 857 N.E.2d 885, 888 (3d Dist. 2006).

5

title" and instead delivered "fraudulent and illegal title" for a vehicle that was not a black 1967 Corvette coupe, in breach of the terms of the contract. Pardo claims that—however one describes the vehicle that he purchased—Mecum has never delivered lawful title to that vehicle, precluding him from registering the car, selling it, or otherwise disposing of it. SAC ¶ 41. Given the nature of the alleged breach, it is no answer for Mecum to simply argue, as it does, that the fact of the certificate of title being attached to the SAC "nullifies the alleged breach," *see* Mem., Dkt. # 113 at 8, and thus requires dismissal of the claim.

In any case, the contract claim cannot be resolved as a matter of law at the pleading stage because there are questions of fact as to whether Mecum delivered "proper and legal" title to Pardo at any time—that is, whether the title delivered is actually legal title to the vehicle that Pardo purchased, whatever that vehicle actually is. The certificate reflects a transfer of title from Mullis to "Mecum Collection" on June 8, 2011, and then to "Billy Bob's Fast Exp. Cars"[2] on June 25, 2011, the date of the auction. The factual issues include whether Mecum , to which title was transferred well in advance of the auction, was the seller and not simply the middleman in the transaction, which may bear on the scope of its legal obligation to provide good title. Another question not resolvable on the pleadings is what "Billy Bob's Fast Cars" is and why Mecum transferred title to it, and whether there ever was a further transfer to Pardo (who does not appear in the chain of title on the certificate attached to his complaint). Pardo contends that he cannot register the title, have a new one issued, or assign the title—even if it were not illegal for him to do so with a known counterfeit vehicle—because it was never endorsed to him. Finally, there is the question whether the title that Mecum passed on is for the car that Pardo bought or for an authentic 1967 black Corvette—or, indeed, whether it is legally sufficient title for *any* vehicle, even if not the one that Pardo thought he was buying.

Mecum does not contend with Pardo's argument that it was contractually obligated to deliver proper and legal title to him within 14 days, but for present purposes Pardo has sufficiently alleged it was and failed to do so. The Court cannot accept Mecum's argument that "title" was in fact delivered to Pardo in satisfaction of the contract without resolving factual questions in favor of Mecum, and that cannot be done on a motion to dismiss.

The Court also rejects Mecum's further argument that all of Pardo's claims are defeated because the bill of sale and the certificate of title confirm that the car Pardo purchased contained the same VIN and trim tags listed on the NCRS certificate, and moreover, that "[t]he title documentation . . . affirmatively establishes that the Subject Corvette was titled as a black, 1967 Corvette in March 2001, some ten years before the vehicle was sold to Mecum." Pardo does not allege that the Corvette was recently counterfeited or that Mecum even participated in the counterfeiting. Rather, Pardo claims that Mecum deliberately or negligently sold a counterfeit vehicle when it knew or should have known that it was not authentic. Given the allegations of the

---

[2] In its reply brief, Mecum insinuates that "Billy Bob's" is "associated with" Pardo (Mem., Dkt. # 117 at 5), but this purported fact is not set forth anywhere the pleadings and is not appropriately considered on a motion to dismiss. Pardo's surreply vehemently contests this allegation.

complaint, the fact that the State of Florida issued a title in 2001 for a vehicle with the same VIN as Pardo's does not mean that Pardo's car is not a fake; one obvious possibility—that Pardo alleges—is that the VIN tags on his car are themselves altered or fraudulent.

As to the argument that Mecum necessarily provided Pardo with what he wished to buy because the VIN, trim tags, bill of sale, and certificate of title of all confirm that it delivered the car that Pardo intended to purchase, again, Mecum misses the heart of Pardo's claim. Mecum's arguments would negate a claim that Mecum delivered the wrong car to Pardo. But Pardo is not complaining that he received a car other than one he bid on. Rather (in addition to asserting that he was defrauded), he is contending that Mecum has failed to deliver legally sufficient title to the car that he did bid on, in violation of the Bidder's Agreement.

3. Rescission

Finally, Mecum does not make any separate argument for dismissing Count VI, for rescission of the contract. (Count V, for unjust enrichment, is directed solely at defendant Mullis, not Mecum Auction). "Rescission" is a remedy, premised on the existence of an otherwise valid contract. *Allianz Ins. Co. v. Guidant Corp.*, 373 Ill.App.3d 652, 675, 869 N.E.2d 1042 (2d Dist. 2007); *see Jensen v. Quik Int'l.*, 213 Ill.2d 119, 127, 820 N.E. 2d 462 (2004) ("[R]escission presumes the existence of an otherwise valid and enforceable contract."). Rescission is an equitable remedy that cancels a contract and returns the parties to the *status quo ante*, with each returning any benefits received under the contract.[3] *Hassan v. Yusuf*, 408 Ill.App.3d 327, 356, 944 N.E.2d 895 (1st Dist. 2011). Rescission is typically a remedy for a contract obtained by fraud, but it may also be awarded where there was a material breach or by mutual agreement. *Id*. at 353. "A claim for rescission is sufficient if it alleges: (1) substantial nonperformance or breach by the defendant; and (2) that the parties can be restored to the status quo ante." *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill. App. 3d 965, 926 N.E. 2d 934 (1st Dist. 2010). For the same reason that the breach-of-contract claim survives, so too does the rescission claim. Pardo has credibly alleged a material breach in the failure to deliver proper and legal title to the vehicle he purchased.

For clarity, Pardo is entitled at the pleading stage to seek both legal remedies for breach of contract and the equitable remedy of rescission, although they are inconsistent. *Finke v. Woodard*, 122 Ill. App. 3d 911, 919 462 N.E.2d 13 (4th Dist. 1984). However, ultimately, they cannot both be awarded. *Hassan,* 408 Ill. App. 3d. at 356 ("[I]t is well-established that a remedy based on rescission is inconsistent with a remedy of damages, which arises out of the enforcement of the contract, and the award of both is, therefore, inappropriate.").

---

[3] Because rescission is simply cancellation of the contract, Pardo's request for "compensatory damages" on the rescission count (*see* SAC ¶ 56(a)-(c)) is a nullity; rescission simply places the parties back in their pre-contract positions.

7

\* \* \*

For the foregoing reasons, Mecum's motion to dismiss Pardo's fraud and misrepresentation claims (Counts I, III, and IV) is granted. The dismissal is with prejudice, and without leave to amend, because Pardo cannot amend his complaint so as to avoid the contractual non-reliance clause. The motion to dismiss the breach of contract and rescission claims (Counts II and VI) is denied.

Date: December 29, 2014

John J. Tharp, Jr.
United States District Judge